**No. 25-383**

# In the United States Court of Appeals for the Ninth Circuit

NICHOLAS A. VENA,
Plaintiff-Appellant,

v.

MOORE, SCHULMAN & MOORE, APC,
JULIE WESTERMAN, AND DAVID SCHULMAN,
Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of California
Honorable Thomas J. Whelan
(3:22-cv-00437-W)

## PLAINTIFF-APPELLEE'S
## MOTION FOR JUDICIAL NOTICE

CHARLES S. LIMANDRI
*cslimandri@limandri.com*
PAUL M. JONNA
*pjonna@limandri.com*
JEFFREY M. TRISSELL
*jtrissell@limandri.com*
**LiMANDRI & JONNA LLP**
Post Office Box 9120
Rancho Santa Fe, CA 92067
(858) 759-9930 Telephone

*Counsel for Plaintiff-Appellant*

1

## MOTION FOR JUDICIAL NOTICE

Pursuant to Fed. R. Evid. 201, this Court has broad authority to take judicial notice of proper matters. *Id.*; *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011). A proper matter of judicial notice is directly relevant state court filings, such as complaints and unpublished court rulings not available in legal databases. *See, e.g., United States v. Thompson*, 127 F.4th 1204, 1209 n.3 (9th Cir. 2025); *Herrera v. City of Palmdale*, 918 F.3d 1037, 1042 n.1 (9th Cir. 2019); *United States v. Navarro*, 800 F.3d 1104, 1110 n.3 (9th Cir. 2015); *United States v. Aguilar*, 782 F.3d 1101, 1103 n.1 (9th Cir. 2015) (citing *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).

Here, Plaintiff-Appellant relied on factually similar state court decisions to justify his arguments that Defendants-Appellants violated his rights while acting under color of state law. *See Rogozienski v. Allen*, No. D047858, 2007 WL 867773, *6-8 (Cal. Ct. App. Mar. 23, 2007), *rev. den.*, No. S151974 (Cal. Jan. 16, 2008) ("*Rogozienski III*") (issues of state action for §1983 liability and legal duty for negligence liability). The District Court, however, found *Rogozienski* materially distinguishable because (1) "the degree of blameworthiness attributable to Defendants is significantly less than existed with attorney Love in *Rogozienski*," and (2) "the foreseeability that Frank [Rogozienski] would be damaged by Love's conduct was more certain than the foreseeability that Nicholas would be injured by Defendants' conduct." 1-ER-22-23.

In preparing for oral argument, counsel for Plaintiff-Appellant discovered the State Bar disciplinary case relating to the *Rogozienski* matter, titled *In the Matter of James Dewolfe Allen, No. 37774 & S. Michael Love, No. 54004*, Nos. 03-O-04706 & 03-O-04707 (Cal. St. Bar Ct. Mar. 20, 2007). Counsel discovered this proceeding on April 22, 2026 and has brought it to the Court's attention as soon as reasonably possible without the opportunity for a conference with opposing counsel. *See* Circuit Adv. Comm. Note to Rule 27-1(5) (obtaining opposing counsel's position is required "[u]nless precluded by extreme time urgency"). In that proceeding, the case initiating document is the Notice of Disciplinary Charges dated March 20, 2007 (Ex. A), and the concluding documents are the stipulated Reprovals dated October 20, 2011 for Attorney Love and November 14, 2011 for Judge Allen. (Ex. B; Ex. C.)

The Reprovals—which are state court orders not available in legal databases—show that Attorney Love owned two one-half ownership interests in the timeshare Warner Springs Ranch, each worth $2,000-$2,500. However, because he did not use his interests frequently, he wanted to dispose of them and avoid paying the monthly maintenance fees. At a party, Attorney Bottomley told Attorney Love that he had just played golf at Warner Springs Ranch, and Attorney Love asked if Attorney Bottomley would be interested in taking over his timeshare interests at no cost. Attorney Bottomley only wanted one one-half interest, but Attorney Love stated that he wanted to get rid of both, so

3

Attorney Bottomley agreed. Attorney Bottomley then gave the other one-half interest to Judge Allen.

The State Bar Court determined that mitigating factors were that Attorney Love did intend to give a gift to Judge Allen, who received it from Attorney Bottomley, and that Attorney Love viewed the timeshare interest primarily as a burden. But aggravating factors were that the conduct resulted in a judicial disqualification bringing disrepute on the judiciary and the loss of over $1 million in attorneys' fees litigating before Judge Allen. (*See* Ex. B, pp.6-7; Ex. C, p.9.) These facts make clear that the *Rogozienski* matter is very similar to the present one where Defendants-Appellees have argued that they did not appreciate that their actions would lead to Judge Lowe's disqualification and where they engaged her for eight mediations, each worth at last $5,000 (for a total of at least $40,000)—far more than the $2,000 one-half timeshare interest at issue in *Rogozienski*.

Both the Notice of Disciplinary Charges and the Reprovals are matters "not subject to reasonable dispute because" they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Because they are directly relevant to the issues in this appeal, Plaintiff-Appellant respectfully requests that the Court take judicial notice of them.

///

///

Respectfully submitted,

Dated: April 22, 2026        By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
LiMANDRI & JONNA LLP
Post Office Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I hereby certify that the foregoing complies with the type-volume limitations in Fed. R. App. P. 27(d)(2)(A). According to the word count feature of Microsoft Word, the foregoing contains 713 words, excluding the exempted parts under Rule 32. The foregoing has been prepared in a proportionally spaced typeface using size 14 text.

*/s/ Paul M. Jonna*
Paul M. Jonna

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Paul M. Jonna*
Paul M. Jonna

**EXHIBIT A**

kwiktag® 035 133 662

THE STATE BAR OF CALIFORNIA
OFFICE OF THE CHIEF TRIAL COUNSEL
SCOTT J. DREXEL, No. 65670
CHIEF TRIAL COUNSEL
RUSSELL G. WEINER, No. 94504
DEPUTY CHIEF TRIAL COUNSEL
VICTORIA R. MOLLOY, No. 97747
ASSISTANT CHIEF TRIAL COUNSEL
ALAN B. GORDON, No. 125642
SUPERVISING TRIAL COUNSEL
CHARLES T. CALIX, No. 146853
DEPUTY TRIAL COUNSEL
1149 South Hill Street
Los Angeles, California 90015-2299
Telephone: (213) 765-1255

**ORIGINAL**

**FILED**

MAR 20 2007

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

**PUBLIC MATTER**

THE STATE BAR COURT

HEARING DEPARTMENT - LOS ANGELES

| | |
|---|---|
| In the Matter of | ) Case Nos. 03-O-04706 and 03-O-04707 |
| JAMES DEWOLFE ALLEN, No. 37774 | ) NOTICE OF DISCIPLINARY CHARGES |
| and | ) |
| S. MICHAEL LOVE, No. 54004 | ) |
| A Member of the State Bar. | ) |

**NOTICE - FAILURE TO RESPOND!**

**IF YOU FAIL TO FILE AN ANSWER TO THIS NOTICE WITHIN THE TIME ALLOWED BY STATE BAR RULES, INCLUDING EXTENSIONS, OR IF YOU FAIL TO APPEAR AT THE STATE BAR COURT TRIAL, (1) YOUR DEFAULT SHALL BE ENTERED, (2) YOU SHALL BE ENROLLED AS AN INACTIVE MEMBER OF THE STATE BAR AND WILL NOT BE PERMITTED TO PRACTICE LAW UNLESS THE DEFAULT IS SET ASIDE ON MOTION TIMELY MADE UNDER THE RULES OF PROCEDURE OF THE STATE BAR, (3) YOU SHALL NOT BE PERMITTED TO PARTICIPATE FURTHER IN THESE PROCEEDINGS UNLESS YOUR DEFAULT IS SET ASIDE, AND (4) YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE.**

**STATE BAR RULES REQUIRE YOU TO FILE YOUR WRITTEN RESPONSE TO THIS NOTICE WITHIN TWENTY DAYS AFTER SERVICE.**

-1-

**IF YOUR DEFAULT IS ENTERED AND THE DISCIPLINE IMPOSED BY THE SUPREME COURT IN THIS PROCEEDING INCLUDES A PERIOD OF ACTUAL SUSPENSION, YOU WILL REMAIN SUSPENDED FROM THE PRACTICE OF LAW FOR AT LEAST THE PERIOD OF TIME SPECIFIED BY THE SUPREME COURT. IN ADDITION, THE ACTUAL SUSPENSION WILL CONTINUE UNTIL YOU HAVE REQUESTED, AND THE STATE BAR COURT HAS GRANTED, A MOTION FOR TERMINATION OF THE ACTUAL SUSPENSION. AS A CONDITION FOR TERMINATING THE ACTUAL SUSPENSION, THE STATE BAR COURT MAY PLACE YOU ON PROBATION AND REQUIRE YOU TO COMPLY WITH SUCH CONDITIONS OF PROBATION AS THE STATE BAR COURT DEEMS APPROPRIATE. SEE RULE 205, RULES OF PROCEDURE FOR STATE BAR COURT PROCEEDINGS.**

The State Bar of California alleges:

## JURISDICTION

1. James Dewolfe Allen ("Respondent Allen") was admitted to the practice of law in the State of California on January 5, 1966, was a member at all times pertinent to these charges, and is currently a member of the State Bar of California.

2. S. Michael Love ("Respondent Love") was admitted to the practice of law in the State of California on December 14, 1972, was a member at all times pertinent to these charges, and is currently a member of the State Bar of California.

## GENERAL BACKGROUND

3. Effective March 4, 1999, Canon 6D(2)(d) of the California Code of Judicial Ethics provided, in pertinent part, as follows:

> "A temporary judge, referee or court-appointed arbitrator shall, from the time of notice and acceptance of appointment until termination of the appointment:

> \* \* \*

> "Under no circumstance accept a gift, bequest, or favor if the donor is a party, person, or entity whose interest are reasonably likely to come before the temporary judge, referee, or court-appointed arbitrator."

4. Effective March 4, 1999, Canon 6D(2)(f) of the California Code of Judicial Ethics provided as follows:

> "A temporary judge, referee or court-appointed arbitrator shall, from the time of notice and acceptance of appointment until termination of the appointment:

> \* \* \*

-2-

"In all proceedings, disclose in writing or on the record information as required by law, or information that the temporary judge, referee or court-appointed arbitrator believes that the parties or their lawyers might consider relevant to the question of disqualification, even where it is believed that there is no actual basis for disqualification."

5. Effective March 4, 1999, the Advisory Committee Commentary to Canon 6D of the California Code of Judicial Ethics provided as follows: "Any exception to the Canons do not excuse a judicial officer's separate statutory duty to disclose information that may result in the judicial officer's recusal or disqualification."

6. From at least July 1, 1995 through June 30, 2001, Rule 244 of the California Rules of Court ("Rule(s)") provided, in pertinent part, as follows:

"(b) **[Order and oath]** The order designating the temporary judge shall be endorsed upon the stipulation, which shall then be filed. The temporary judge shall take and subscribe the oath of office, which shall be attached to the stipulation and order of designation, and the case shall then be assigned to the temporary judge for trial. After the oath is filed, the temporary judge may proceed with the hearing, trial, and determination of the case."[1]

7. From July 1, 2001 through June 30, 2006,[2] Rule 244 provided, in pertinent part, as follows:

"(b) **[Order and oath]** The order designating the temporary judge must be endorsed upon the stipulation, which must then be filed. The temporary judge must take and subscribe the oath of office and certify that he or she is aware of and will comply with applicable provisions of canon 6 of the Code of Judicial Ethics and these rules. The oath and certification must be attached to the stipulation and order of designation, and the case will then be assigned to the temporary judge for trial. After the oath is filed, the temporary judge may proceed with the hearing, trial, and determination of the case.

* * *

"(c) **[Disclosure to the parties]** In addition to any other disclosure required by law, no later than five days after appointment as a temporary judge or, if the temporary judge is not aware of his or her appointment or of a matter subject to disclosure at that time, as soon as practicable thereafter, a temporary judge must disclose to the parties:

---

[1] A January 1, 2001 amendment to Rule 244(a) did not affect the portions of the Rule pertinent to this disciplinary proceeding.

[2] Effective July 1, 2006, Rule 244 was amended and renumbered Rule 243.31. Effective January 1, 2007, Rule 243.31 was renumbered Rule 2.831.

-3-

"(1) Any matter subject to disclosure under subdivisions (D)(2)(f) and (D)(2)(g) of canon 6 of the Code of Judicial Ethics; and

"(2) Any significant personal or professional relationship the temporary judge has or has had with a party, attorney, or law firm in the instant case, including the number and nature of any other proceedings in the past 24 months in which the temporary judge has been privately compensated by a party, attorney, law firm, or insurance company in the instant case for any services, including, but not limited to, service as an attorney, expert witness, or consultant or as a judge, referee, arbitrator, mediator, settlement facilitator, or other alternative dispute resolution neutral."

8. On or about January 30, 1982, Frank E. Rogozienski ("Frank") and Shirley L. Rogozienski ("Shirley," collectively the "Rogozienskis") were married.

9. On or about, October 27, 1997, the Rogozienskis separated.

### COUNT ONE

Case No. 03-O-04706 (Respondent Allen)
Rules of Professional Conduct, Rule 1-710
[Member as a Temporary Judge violating California Rules of Court, Rule 244 and Canon 6D of the Code of Judicial Ethics]

10. Respondent Allen wilfully violated Rules of Professional Conduct, rule 1-710, by failing to comply with California Rules of Court, Rule 244 and Canon 6D(2)(f) of the Code of Judicial Ethics while acting in a judicial capacity pursuant to an order or appointment by a court, as follows:

11. The allegations of paragraphs 3 through 9 are incorporated by reference.

12. On or about October 30, 1997, Shirley filed a petition for dissolution in the San Diego Superior Court ("Superior Court") titled *In re the Marriage of Shirley L. Rogozienski and Frank E. Rogozienski*, Case No. D440154 ("*In re Rogozienski*.")

13. Respondent Love was lead counsel representing Shirley in *In re Rogozienski*.

14. On or about July 29, 1998, the Rogozienskis stipulated to Respondent Allen serving as a temporary judge for all purposes in *In re Rogozienski* pursuant to Rule 244 of the California Rules of Court. On or about August 4, 1998, the Superior Court approved and ordered Respondent Allen to serve as the temporary judge. On or about August 4, 1998, Respondent Allen signed the oath to serve as the temporary judge.

-4-

15. From approximately August 4, 1998 until approximately March 27, 2003, Respondent Allen issued decisions that affected the characterization and distribution of the property interests of the Rogozienskis.

16. At the time that Respondent Allen was appointed to serve as the temporary judge, Respondent Allen had known, professionally and socially, Respondent Love for approximately 18 years. Respondent Allen and Respondent Love had served on the Executive Committee of the San Diego Certified Family Specialists and were members of the American Academy of Matrimonial Lawyers. Respondent Love and his spouse had been to Respondent Allen's home on several occasions as part of social and/or professional events.

17. At no time did Respondent Allen disclose in writing or on the record his professional and/or social relationship with Respondent Love in *In re Rogozienski*.

18. Edward I. Silverman ("Silverman") was co-counsel representing Shirley in *In re Rogozienski*.

19. At the time that Respondent Allen was appointed to serve as the temporary judge, Respondent Allen had known, professionally and socially, Silverman for approximately 23 years. Respondent Allen had met Silverman in approximately 1981 when Silverman clerked with Respondent Allen's then spouse, Linda Cory House ("House"), for the United States District Court. Respondent Allen maintained a close social relationship with Silverman, had been to Silverman's home on several occasions, and Silverman had been to Respondent Allen's home on several occasions as part of large social gatherings.

20. During the time that Silverman provided legal services to Shirley, Silverman was employed by the law firm founded by House's father, Alec L. Cory.

21. At no time did Respondent Allen disclose in writing or on the record his professional and/or social relationship with Silverman in *In re Rogozienski*.

22. On or about November 16, 2001, Shirley filed a declaration seeking, *inter alia*, attorneys' fees and costs of $298,387.00 to Respondent Love and $105,923.55 to Silverman.

23. On or about November 12, 2002, Respondent Allen issued his Second Amended Statement of Decision awarding attorney fees and costs of $250,000.

-5-

24. By failing to disclose in writing or on the record his professional and/or social relationship with the attorneys for Shirley, Respondent Allen failed to comply with California Rules of Court, Rule 244 and Canon 6D(2)(f) of the Code of Judicial Ethics while acting in a judicial capacity pursuant to an order or appointment by a court.

## COUNT TWO

Case No. 03-O-04706 (Respondent Allen)
Rules of Professional Conduct, Rule 1-710
[Member as a Temporary Judge violating California Rules of Court,
Rule 244 and Canon 6D of the Code of Judicial Ethics]

25. Respondent Allen wilfully violated Rules of Professional Conduct, rule 1-710, by failing to comply with California Rules of Court, Rule 244 and Canon 6D(2)(d) of the Code of Judicial Ethics while acting in a judicial capacity pursuant to an order or appointment by a court, as follows:

26. The allegations of paragraphs 3 through 9 and 14 through 23 are incorporated by reference.

27. In or about November 2001, Harold S. Bottomley, III, ("Bottomley") contacted Warner Springs Ranch (a time share resort property) and determined that they were selling one-half interests or memberships at the ranch for $2,500. A one-half interest or membership permitted members to use the recreational facilities at the ranch (golf, tennis, horse back riding, hiking, etc) during odd numbered or even number months. A full interest or membership permitted members to use the recreational facilities at the ranch year round.

28. In December 2001, Respondent Love and Bottomley were attending a Christmas Party at Respondent Allen's home. Bottomley told Respondent Love that Bottomley and Respondent Allen had recently played golf at the Warner Springs Ranch and were considering becoming members. Respondent Love and/or Respondent Love's spouse told Bottomley that they had a full membership that they were no longer using and wanted to know if Bottomley and his spouse would be interested in assuming their membership. Respondent Allen was present and heard the conversation between Respondent Love and Bottomley.

29. Between December 2001 and on or about February 8, 2002, Respondent Love and Bottomley agreed that Respondent Love and his spouse would Quitclaim one-half of their interest in Warner Springs Ranch to Bottomley and his spouse, and the other one-half of their interest to Bottomley alone. Bottomley told Respondent Love that Bottomley and his spouse would keep and use the one-half interest that they would receive, and that Bottomley would Quitclaim the other one-half interest directly to Respondent Allen.

30. Between December 2001 and on or about February 8, 2002, Respondent Allen and Bottomley agreed that Bottomley and his spouse would keep and use the one-half interest that they would receive from Respondent Love and his spouse, and that Bottomley would Quitclaim the other one-half interest that he would receive from Respondent Love and his spouse directly to Respondent Allen.

31. On February 22, 2002, Respondent Love and/or Bottomley recorded the Quitclaims transferring one-half of the interest that Respondent Love and his spouse had in Warner Springs Ranch to Bottomley and his spouse, and the other one-half of their interest to Bottomley alone.

32. On or about March 18, 2002, Bottomley and/or Respondent Allen recorded the Quitclaim transferring the one-half interest from Bottomley to Respondent Allen.

33. On or about May 20, 2002, Respondent Allen recorded the Grant Deed for the timeshare stating the approximately value as $2,000.

34. At no time did Respondent Allen offer to pay, agree to pay, or pay any sum of money to Respondent Love, Bottomley, or anyone else for his receipt of the one-half membership in the Warner Springs Ranch that Bottomley received from Respondent Love.

35. By accepting a gift or favor from a donor whose interests were going to come before the temporary judge, Respondent Allen failed to comply with California Rules of Court, Rule 244 and Canon 6D(2)(f) of the Code of Judicial Ethics while acting in a judicial capacity pursuant to an order or appointment by a court.

## COUNT THREE

Case No. 03-O-04706 (Respondent Allen)
Rules of Professional Conduct, Rule 1-710
[Member as a Temporary Judge violating California Rules of Court,
Rule 244 and Canon 6D of the Code of Judicial Ethics]

36. Respondent Allen wilfully violated Rules of Professional Conduct, rule 1-710, by failing to comply with California Rules of Court, Rule 244 and Canon 6D(2)(d) of the Code of Judicial Ethics while acting in a judicial capacity pursuant to an order or appointment by a court, as follows:

37. The allegations of paragraphs 3 through 9, 14 through 23, and 27 through 34 are incorporated by reference.

38. At no time did Respondent Allen disclose in writing or on the record in *In re Rogozienski* that he had accepted as a gift a one-half interest in Warner Springs Ranch from Bottomley that had been given to Bottomley by Respondent Love and his spouse.

39. By failing to disclose in writing or on the record in *In re Rogozienski* that he had accepted a gift of a one-half interest in Warner Springs Ranch from Bottomley that had been given to Bottomley by Respondent Love and his spouse, Respondent Allen failed to comply with California Rules of Court, Rule 244 and Canon 6D(2)(f) of the Code of Judicial Ethics while acting in a judicial capacity pursuant to an order or appointment by a court.

## COUNT FOUR

Case No. 03-O-04706 (Respondent Allen)
Rules of Professional Conduct, rule 1-120
[Assisting, Soliciting or Inducing a Violation]

40. Respondent Allen wilfully violated Rules of Professional Conduct, rule 1-120, by assisting, soliciting or inducing a violation of the Rules of Professional Conduct or the State Bar Act, as follows:

41. The allegations of paragraphs 3 through 9, 14 through 23, and 27 through 34 are incorporated by reference.

42. Rules of Professional Conduct, rule 5-300(A) prohibits giving or lending, directly or indirectly, a thing of value to a judge, official, or employee of a tribunal where no personal or family relationship exists such that gifts are customarily given and exchanged.

43. In or about 2001, Respondent Allen learned during a conversation with Bottomley that Bottomley was interested in obtaining a membership in the Warner Springs Ranch.

44. After his conversation with Bottomley in or about 2001, Respondent Allen learned during a conversation with Respondent Love that Respondent Love was interested in divesting himself of his full membership in the Warner Springs Ranch. During their conversation, Respondent Allen told Respondent Love about Bottomley's interest in obtaining a membership in the Warner Springs Ranch.

45. After his conversation with Respondent Love in or about 2001, Respondent Allen spoke with Bottomley and suggested that Bottomley speak with Respondent Love regarding his interest in divesting himself of his membership in the Warner Springs Ranch.

46. After speaking with Bottomley and suggesting that Bottomley speak with Respondent Love in or about 2001, Bottomley spoke with Respondent Allen and told him that Bottomley preferred not having the monthly expense of a full membership and proposed that Bottomley transfer to Respondent Allen one-half of the full membership that Bottomley was going to receive from Respondent Love. Respondent Allen and Bottomley agreed that Respondent Allen would upgrade to a full membership the one-half membership that Bottomley was going to transfer to him that Bottomley was going to receive from Respondent Love.

47. By assisting, soliciting, inducing and/or initiating the transfer of Respondent Love's full membership in the Warner Springs Ranch to Bottomley and the transfer of one-half of the full membership that Bottomley received from Respondent Love to himself while acting as a temporary judge in a case involving Respondent Love where no personal or family relationship existed such that gifts were customarily given and exchanged, Respondent Allen wilfully assisted, solicited or induced Respondent Love to violate rule 5-300(A).

## COUNT FIVE

Case No. 03-O-04707 (Respondent Love)
Rules of Professional Conduct, rule 5-300(A)
[Giving or Lending to a Judge or Official]

48. Respondent Love wilfully violated Rules of Professional Conduct, rule 5-300(A), by giving or lending, directly or indirectly, a thing of value to a judge, official, or employee of a tribunal where no personal or family relationship exists such that gifts are customarily given and exchanged, as follows:

49. The allegations of paragraphs 3 through 9, 14 through 23, 27 through 34, and 42 through 46 are incorporated by reference.

50. By indirectly giving a thing of value to a temporary judge where no personal or family relationship exists, Respondent Love wilfully gave or lent, directly or indirectly, a thing of value to a judge, official, or employee of a tribunal where no personal or family relationship exists such that gifts are customarily given and exchanged.

## NOTICE - INACTIVE ENROLLMENT!

**YOU ARE HEREBY FURTHER NOTIFIED THAT IF THE STATE BAR COURT FINDS, PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6007(c), THAT YOUR CONDUCT POSES A SUBSTANTIAL THREAT OF HARM TO THE INTERESTS OF YOUR CLIENTS OR TO THE PUBLIC, YOU MAY BE INVOLUNTARILY ENROLLED AS AN INACTIVE MEMBER OF THE STATE BAR. YOUR INACTIVE ENROLLMENT WOULD BE IN ADDITION TO ANY DISCIPLINE RECOMMENDED BY THE COURT. SEE RULE 101(c), RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.**

## NOTICE - COST ASSESSMENT!

**IN THE EVENT THESE PROCEDURES RESULT IN PUBLIC DISCIPLINE, YOU MAY BE SUBJECT TO THE PAYMENT OF COSTS INCURRED BY THE STATE BAR IN THE INVESTIGATION, HEARING AND REVIEW OF**

///
///
///
///
///
///

-10-

**THIS MATTER PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6086.10. SEE RULE 280, RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.**

Respectfully submitted,

THE STATE BAR OF CALIFORNIA
OFFICE OF THE CHIEF TRIAL COUNSEL

Dated: March 20, 2007

By: _____
Charles T. Calix
Deputy Trial Counsel

## DECLARATION OF SERVICE BY CERTIFIED MAIL

**CASE NUMBER: 03-O-04706; 03-O-04707**

I, the undersigned, over the age of eighteen (18) years, whose business address and place of employment is the State Bar of California, 1149 South Hill Street, Los Angeles, California 90015, declare that I am not a party to the within action; that I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for mailing with the United States Postal Service; that in the ordinary course of the State Bar of California's practice, correspondence collected and processed by the State Bar of California would be deposited with the United States Postal Service that same day; that I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after date of deposit for mailing contained in the affidavit; and that in accordance with the practice of the State Bar of California for collection and processing of mail, I deposited or placed for collection and mailing in the City and County of Los Angeles, on the date shown below, a true copy of the within

## NOTICE OF DISCIPLINARY CHARGES

in a sealed envelope placed for collection and mailing as certified mail, return receipt requested, Article No.: 7160 3901 9844 3983 6182 AND 7160 3901 9844 3983 6199, at Los Angeles, on the date shown below, addressed to:

**7160 3901 9844 3983 6182** (Allen)
Donald A. English
550 W. "C" Street #1800
San Diego, CA 92101

**7160 3901 9844 3983 6199** (Love)
Daniel M. White
550 W. C Street, Ste. 950
San Diego, CA 92101-8569

in an inter-office mail facility regularly maintained by the State Bar of California addressed to:

**N/A**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Los Angeles, California, on the date shown below.

DATED: _March 20, 2007_      SIGNED: _____
                             Lupe Pacheco-Granados
                             Declarant

**EXHIBIT B**

ORIGINAL

(Do not write above this line.)

| | | |
|---|---|---|
| **State Bar Court of California**<br>**Hearing Department**<br>**Los Angeles**<br>REPROVAL | | kwiktag ®    018 044 235 |
| Counsel For The State Bar<br><br>Charles T. Calix<br>Deputy Trial Counsel<br>1149 S. Hill Street<br>Los Angeles, CA 90015<br>(213) 765-1000<br><br><br>Bar # 146853 | Case Number(s):<br>03-O-4707 | For Court use only<br><br><br>**FILED**<br>OCT 2 0 2011<br>STATE BAR COURT<br>CLERK'S OFFICE<br>LOS ANGELES<br><br>**PUBLIC MATTER** |
| Counsel For Respondent<br><br>Daniel M. White<br>White & Oliver<br>550 West C Street, Suite 950<br>San Diego, CA 92101<br>(619) 239-0300<br><br><br>Bar # 68011 | Submitted to: **Settlement Judge**<br><br>STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION AND ORDER APPROVING |
| In the Matter of:<br>S. Michael Love<br><br><br>Bar # 54004<br><br>A Member of the State Bar of California<br>(Respondent) | **PUBLIC REPROVAL**<br><br>☐ PREVIOUS STIPULATION REJECTED |

**Note: All information required by this form and any additional information which cannot be provided in the space provided, must be set forth in an attachment to this stipulation under specific headings, e.g., "Facts," "Dismissals," "Conclusions of Law," "Supporting Authority," etc.**

## A. Parties' Acknowledgments:

(1) Respondent is a member of the State Bar of California, admitted December 14, 1972.

(2) The parties agree to be bound by the factual stipulations contained herein even if conclusions of law or disposition are rejected or changed by the Supreme Court.

(3) All investigations or proceedings listed by case number in the caption of this stipulation are entirely resolved by this stipulation and are deemed consolidated. Dismissed charge(s)/count(s) are listed under "Dismissals." The stipulation consists of 13 pages, not including the order.

(Effective January 1, 2011)

Reproval

1

(Do not write above this line.)

(4) A statement of acts or omissions acknowledged by Respondent as cause or causes for discipline is included under "Facts."

(5) Conclusions of law, drawn from and specifically referring to the facts are also included under "Conclusions of Law".

(6) The parties must include supporting authority for the recommended level of discipline under the heading "Supporting Authority."

(7) No more than 30 days prior to the filing of this stipulation, Respondent has been advised in writing of any pending investigation/proceeding not resolved by this stipulation, except for criminal investigations.

(8) Payment of Disciplinary Costs—Respondent acknowledges the provisions of Bus. & Prof. Code §§6086.10 & 6140.7. (Check one option only):

☒ Costs are added to membership fee for calendar year following effective date of discipline (public reproval).

☐ Case ineligible for costs (private reproval).

☐ Costs are to be paid in equal amounts prior to February 1 for the following membership years: (Hardship, special circumstances or other good cause per rule 5.132, Rules of Procedure.) If Respondent fails to pay any installment as described above, or as may be modified by the State Bar Court, the remaining balance is due and payable immediately.

☐ Costs are waived in part as set forth in a separate attachment entitled "Partial Waiver of Costs".

☐ Costs are entirely waived.

(9) The parties understand that:

(a) ☐ A private reproval imposed on a respondent as a result of a stipulation approved by the Court prior to initiation of a State Bar Court proceeding is part of the respondent's official State Bar membership records, but is not disclosed in response to public inquiries and is not reported on the State Bar's web page. The record of the proceeding in which such a private reproval was imposed is not available to the public except as part of the record of any subsequent proceeding in which it is introduced as evidence of a prior record of discipline under the Rules of Procedure of the State Bar.

(b) ☐ A private reproval imposed on a respondent after initiation of a State Bar Court proceeding is part of the respondent's official State Bar membership records, is disclosed in response to public inquiries and is reported as a record of public discipline on the State Bar's web page.

(c) ☒ A public reproval imposed on a respondent is publicly available as part of the respondent's official State Bar membership records, is disclosed in response to public inquiries and is reported as a record of public discipline on the State Bar's web page.

## B. Aggravating Circumstances [for definition, see Standards for Attorney Sanctions for Professional Misconduct, standard 1.2(b)]. Facts supporting aggravating circumstances are required.

(1) ☐ **Prior record of discipline** [see standard 1.2(f)]

(a) ☐ State Bar Court case # of prior case

(b) ☐ Date prior discipline effective

(c) ☐ Rules of Professional Conduct/ State Bar Act violations:

(Effective January 1, 2011)

Reproval

(Do not write above this line.)

(d) ☐ Degree of prior discipline

(e) ☐ If Respondent has two or more incidents of prior discipline, use space provided below or a separate attachment entitled "Prior Discipline.

(2) ☐ **Dishonesty:** Respondent's misconduct was surrounded by or followed by bad faith, dishonesty, concealment, overreaching or other violations of the State Bar Act or Rules of Professional Conduct.

(3) ☐ **Trust Violation:** Trust funds or property were involved and Respondent refused or was unable to account to the client or person who was the object of the misconduct for improper conduct toward said funds or property.

(4) ☒ **Harm:** Respondent's misconduct harmed significantly a client, the public or the administration of justice. See attached.

(5) ☐ **Indifference:** Respondent demonstrated indifference toward rectification of or atonement for the consequences of his or her misconduct.

(6) ☐ **Lack of Cooperation:** Respondent displayed a lack of candor and cooperation to victims of his/her misconduct or to the State Bar during disciplinary investigation or proceedings.

(7) ☐ **Multiple/Pattern of Misconduct:** Respondent's current misconduct evidences multiple acts of wrongdoing or demonstrates a pattern of misconduct.

(8) ☐ **No aggravating circumstances** are involved.

**Additional aggravating circumstances:**

## C. Mitigating Circumstances [see standard 1.2(e)]. Facts supporting mitigating circumstances are required.

(1) ☒ **No Prior Discipline:** Respondent has no prior record of discipline over many years of practice coupled with present misconduct which is not deemed serious. See attached.

(2) ☐ **No Harm:** Respondent did not harm the client or person who was the object of the misconduct.

(3) ☒ **Candor/Cooperation:** Respondent displayed spontaneous candor and cooperation with the victims of his/her misconduct and to the State Bar during disciplinary investigation and proceedings. See attached.

(4) ☐ **Remorse:** Respondent promptly took objective steps spontaneously demonstrating remorse and recognition of the wrongdoing, which steps were designed to timely atone for any consequences of his/her misconduct.

(5) ☐ **Restitution:** Respondent paid $ ___ on ___ in restitution to ___ without the threat or force of disciplinary, civil or criminal proceedings.

(6) ☐ **Delay:** These disciplinary proceedings were excessively delayed. The delay is not attributable to Respondent and the delay prejudiced him/her.

(7) ☒ **Good Faith:** Respondent acted in good faith. See attached.

(Effective January 1, 2011)                                                                Reproval

3

(Do not write above this line.)

(8) ☐ **Emotional/Physical Difficulties:** At the time of the stipulated act or acts of professional misconduct Respondent suffered extreme emotional difficulties or physical disabilities which expert testimony would establish was directly responsible for the misconduct. The difficulties or disabilities were not the product of any illegal conduct by the member, such as illegal drug or substance abuse, and Respondent no longer suffers from such difficulties or disabilities.

(9) ☐ **Severe Financial Stress:** At the time of the misconduct, Respondent suffered from severe financial stress which resulted from circumstances not reasonably foreseeable or which were beyond his/her control and which were directly responsible for the misconduct.

(10) ☐ **Family Problems:** At the time of the misconduct, Respondent suffered extreme difficulties in his/her personal life which were other than emotional or physical in nature.

(11) ☒ **Good Character:** Respondent's good character is attested to by a wide range of references in the legal and general communities who are aware of the full extent of his/her misconduct. See attached.

(12) ☐ **Rehabilitation:** Considerable time has passed since the acts of professional misconduct occurred followed by convincing proof of subsequent rehabilitation.

(13) ☐ **No mitigating circumstances** are involved.

**Additional mitigating circumstances:**

## D. Discipline:

(1) ☐ **Private reproval (check applicable conditions, if any, below)**

    (a) ☐ Approved by the Court prior to initiation of the State Bar Court proceedings (no public disclosure).

    (b) ☐ Approved by the Court after initiation of the State Bar Court proceedings (public disclosure).

or

(2) ☒ **Public reproval (Check applicable conditions, if any, below)**

## E. Conditions Attached to Reproval:

(1) ☒ Respondent must comply with the conditions attached to the reproval for a period of two (2) years.

(2) ☒ During the condition period attached to the reproval, Respondent must comply with the provisions of the State Bar Act and Rules of Professional Conduct.

(3) ☒ Within ten (10) days of any change, Respondent must report to the Membership Records Office of the State Bar and to the Office of Probation of the State Bar of California ("Office of Probation"), all changes of information, including current office address and telephone number, or other address for State Bar purposes, as prescribed by section 6002.1 of the Business and Professions Code.

(4) ☒ Within thirty (30) days from the effective date of discipline, Respondent must contact the Office of Probation and schedule a meeting with Respondent's assigned probation deputy to discuss these terms and conditions of probation. Upon the direction of the Office of Probation, Respondent must meet with the probation deputy either in-person or by telephone. During the period of probation, Respondent must promptly meet with the probation deputy as directed and upon request.

(Effective January 1, 2011)

Reproval

4

(Do not write above this line.)

Professional Conduct, and all conditions of the reproval during the preceding calendar quarter. Respondent must also state in each report whether there are any proceedings pending against him or her in the State Bar Court and if so, the case number and current status of that proceeding. If the first report would cover less than 30 (thirty) days, that report must be submitted on the next following quarter date, and cover the extended period.

In addition to all quarterly reports, a final report, containing the same information, is due no earlier than twenty (20) days before the last day of the condition period and no later than the last day of the condition period.

(6) ☐ Respondent must be assigned a probation monitor. Respondent must promptly review the terms and conditions of probation with the probation monitor to establish a manner and schedule of compliance. During the period of probation, Respondent must furnish such reports as may be requested, in addition to the quarterly reports required to be submitted to the Office of Probation. Respondent must cooperate fully with the monitor.

(7) ☒ Subject to assertion of applicable privileges, Respondent must answer fully, promptly and truthfully any inquiries of the Office of Probation and any probation monitor assigned under these conditions which are directed to Respondent personally or in writing relating to whether Respondent is complying or has complied with the conditions attached to the reproval.

(8) ☒ Within one (1) year of the effective date of the discipline herein, Respondent must provide to the Office of Probation satisfactory proof of attendance at a session of the Ethics School, and passage of the test given at the end of that session.

　　　☐　No Ethics School recommended. Reason:　　　.

(9) ☐ Respondent must comply with all conditions of probation imposed in the underlying criminal matter and must so declare under penalty of perjury in conjunction with any quarterly report to be filed with the Office of Probation.

(10) ☐ Respondent must provide proof of passage of the Multistate Professional Responsibility Examination ("MPRE"), administered by the National Conference of Bar Examiners, to the Office of Probation within one year of the effective date of the reproval.

　　　☒ No MPRE recommended. Reason: Family law is one of the most contentious, if not the most contentious, areas of law. Respondent has exclusively practiced family law for almost 39 years with without discipline. Given that history and the evidence of impeccable moral character, the State Bar and Respondent do not believe that the MPRE is necessary or appropriate.

(11) ☐ The following conditions are attached hereto and incorporated:

　　　☐　Substance Abuse Conditions　　　☐　Law Office Management Conditions

　　　☐　Medical Conditions　　　☐　Financial Conditions

## F. Other Conditions Negotiated by the Parties:

(Effective January 1, 2011)

Reproval

**B. AGGRAVATING CIRCUMSTANCES.**

**(4) Harm:** Respondent's misconduct harmed significantly a client, the public or the administration of justice.

Respondent's misconduct provided Frank E. Rogozienski ("Frank") with good cause to file a Statement of Disqualification of Temporary Judge James D. Allen" ("Allen") in the petition for dissolution in the San Diego Superior Court ("Superior Court") titled *In re the Marriage of Shirley L. Rogozienski and Frank E. Rogozienski*, Case No. D440154 ("*In re Rogozienski*"). The Statement caused Allen to withdraw as the Temporary Judge in *In re Rogozienski* after having served in that capacity for over four years, including innumerable hearings and three separate trials taking testimony on over twenty days. Allen's withdrawal resulted in two appellate proceedings, which resulted in all of Allen's decisions being set aside and new trial on all issues being ordered. Frank and Shirley E. Rogozienski ("Shirley") each spent four years and each spent over one million dollars on legal proceedings that were set aside, which caused significant harm to his client – Shirley and to the public – Frank.

Respondent's misconduct harmed the public because the misconduct was reported in the media, which cast doubt upon the independence and impartiality of the judiciary and legal system.

**C. MITIGATING CIRCUMSTANCES.**

**(1) No Prior Discipline:** Respondent has no prior record of discipline over many years of practice coupled with present misconduct which is not deemed serious.

Respondent was admitted December 14, 1972 and has no prior record of discipline. Mitigation is limited by the fact that the present misconduct is deemed serious.

**(2) Candor/Cooperation:** Respondent displayed spontaneous candor and cooperation with the victims of the member's misconduct and to the State Bar during disciplinary investigation and proceedings;

Once Respondent became aware of the problems caused by his misconduct, he immediately and profusely apologized to Shirley. After Frank filed a lawsuit against Respondent and Respondent was required to withdraw from representing Shirley, Respondent did everything that he could do to assist her.

**(7) Good Faith** Respondent acted in good faith.

When Respondent discovered that Harold S. Bottomley, III ("Bottomley"), had transferred the one-half ownership interest in Warner Springs Ranch that Respondent and his spouse (collectively the "Loves") had given to Bottomley to Allen, Respondent should have requested that Allen return the interest to Bottomley, but did not do so because he believed that it would be discourteous to have done so and because the Loves' believed that the one-half

6

ownership interest had no value because they were paying monthly maintenance fees even though they were not using the recreational facilities.

    **(11)**    **Good character:** Respondent's good character is attested to by a wide range of references in the legal and general communities who are aware of the full extent of his misconduct.

Respondent served three years with the United States Marine Corps, including 13 months in Vietnam as an Infantry Platoon and Company Commander. Respondent was wounded in combat, was awarded a Purple Heart and a Bronze Star, and left the Marine Corps as a Captain.

Respondent has practiced family law in the same firm since he began practicing law in 1972 and has been a certified specialized in family law since 1980. He has served a Pro Tem for the Superior Court for more than 15 years and as a Pro Tem Settlement Conference Judge for the Superior Court, Family Law Division for more than 20 years. He volunteered his service to the San Diego County Bar Association, the Family Law Bar, and the Family Law Bench, and has served on various continuing legal education panels.

In 1997, Respondent was presented with the 11th Annual Norby Award by the San Diego Family Law Judiciary, which is awarded by the judiciary for service to the bench.

In October 2011, Respondent was named the Best Lawyers' 2012 San Diego Family Law Lawyer of the Year, which is a honor bestowed on only a single lawyer in each specialty in each community.  -

If called upon to testify, present and retired judicial officers, his law partners and employees, co-counsel, opposing counsel, and clients would unanimously testify to Respondent's superlative good character, including but not limited to his decency, respectfully treatment of everyone, and his calming and pleasant demeanor.

(Do not write above this line.)

| In the Matter of:<br>S. Michael Love | Case Number(s):<br>03-O-04707 |
| --- | --- |

## Nolo Contendere Plea Stipulations to Facts, Conclusions of Law, and Disposition

The terms of pleading nolo contendere are set forth in the Business and Professions Code and the Rules of Procedures of the State Bar. The applicable provisions are set forth below:

### Business and Professions Code § 6085.5 Disciplinary Charges; Pleas to Allegations

There are three kinds of pleas to the allegations of a notice of disciplinary charges or other pleading which initiates a disciplinary proceeding against a member:

(a) Admission of culpability.

(b) Denial of culpability.

(c) Nolo contendere, subject to the approval of the State Bar Court. The court shall ascertain whether the member completely understands that a plea of nolo contendere will be considered the same as an admission of culpability and that, upon a plea of nolo contendere, the court will find the member culpable. The legal effect of such a plea will be the same as that of an admission of culpability for all purposes, except that the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, or the factual basis for, the pleas, may not be used against the member as an admission in any civil suit based upon or growing out of the act upon which the disciplinary proceeding is based.

### Rules of Procedure of the State Bar, rule 5.56. Stipulations to Facts, Conclusions of Law, and Disposition

"**(A) Contents.** A proposed stipulation to facts, conclusions of law, and disposition must comprise:
[¶] . . . [¶]
(5) a statement that the member either:
(a) admits the truth of the facts comprising the stipulation and admits culpability for misconduct; or
(b) pleads nolo contendere to those facts and misconduct;
[¶] . . . [¶]
**(B) Plea of Nolo Contendere.** If the member pleads nolo contendere, the stipulation must also show that the member understands that the plea is treated as an admission of the stipulated facts and an admission of culpability."

I, the Respondent in this matter, have read the applicable provisions of Business and Professions Code section 6085.5 and rule 5.56 of the Rules of Procedure of the State Bar. I plead nolo contendere to the charges set forth in this stipulation and I completely understand that my plea will be considered the same as an admission of culpability except as stated in Business and Professions Code section 6085.5(c).

October 7 , 2011
Date

Respondent's Signature

S. Michael Love
Print Name

(Effective January 1, 2011)

Nolo Contendere Plea

## ATTACHMENT TO

## STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION

**IN THE MATTER OF:    S. MICHAEL LOVE**

**CASE NUMBER(S):    03-O-04707**

S. Michael Love ("Respondent") pleads nolo contendere to the following facts and violations. Respondent completely understands that the plea for nolo contendere shall be considered the same as an admission of the stipulated facts and of his culpability of the statutes and/or Rules of Professional Conduct specified herein.

## FACTS.

1.     On or about January 30, 1982, Frank E. Rogozienski ("Frank") and Shirley L. Rogozienski ("Shirley," collectively the "Rogozienskis") were married.

2.     On or about, October 27, 1997, the Rogozienskis separated.

3.     On or about October 30, 1997, Shirley filed a petition for dissolution in the San Diego Superior Court ("Superior Court") titled *In re the Marriage of Shirley L. Rogozienski and Frank E. Rogozienski*, Case No. D440154 ("*In re Rogozienski*").

4.     On or about July 29, 1998, the Rogozienskis stipulated to attorney James D. Allen ("Allen") serving as a temporary judge for all purposes in *In re Rogozienski* pursuant to Rule 244 of the California Rules of Court.

5.     On or about August 4, 1998, the Superior Court approved and ordered Allen to serve as the temporary judge in *In re Rogozienski*. On or about August 4, 1998, Allen signed the oath to serve as the temporary judge in *In re Rogozienski*. Allen never disclosed in writing or orally any information: that the parties or attorneys might consider relevant to the question of his disqualification; and/or concerning his personal or professional relationships with the parties, attorneys or law firms in the proceeding.

6.     Between in or about 1999 and in or about late 2004, Respondent was one of the lead attorneys representing Shirley in *In re Rogozienski*.

7.     From approximately August 4, 1998 until approximately March 27, 2003, Allen issued decisions that affected the characterization and distribution of the property interests of the Rogozienskis in *In re Rogozienski*.

8.     As of December 2001, Respondent and his spouse (Respondent and his spouse are collectively referred to as the "Loves") had owned a full or one-half ownership interest in Warner Springs Ranch since March 1984. Warner Springs Ranch was a time share resort property that permitted owners to use the recreational facilities at the ranch, including but not limited to golf, tennis, horseback riding, and hiking. A one-half ownership interest permitted owners to use the facilities during

*9*

Attachment Page 1

odd numbered or even number months. A full ownership interest permitted owners to use the facilities year round.

9. As of December 2001, the Loves were no longer using the recreational facilities at Warner Springs Ranch and were interested in divesting themselves of their two one-half ownership interests (which constituted a full interest that permitted the Loves to use the facilities year round) to avoid paying the monthly maintenance fees.

10. In December 2001, the Loves attended a Christmas Party at Allen's home (the "Christmas Party"). The attendees included persons from Allen's office and members of the San Diego family law legal community. While at the party, the Loves met Harold S. Bottomley, III ("Bottomley"), and his spouse (Bottomley and his spouse are collectively referred to as the "Bottomleys"). The Bottomleys told the Loves that Bottomley had recently played golf at the Warner Springs Ranch and that the Bottomleys were considering becoming owners. The Loves told the Bottomleys that the Loves had two one-half ownership interests that they were no longer using and wanted to know if the Bottomleys would be interested in assuming their interests at no cost to the Bottomleys.

11. Between the Christmas Party and on or about February 8, 2002, Respondent and Bottomley discussed the Loves' interests in Warner Springs Ranch. Bottomley told Respondent that the Bottomleys were remained interested in assuming the Loves' two one-half interests, but were concerned about paying the monthly maintenance fees. Bottomley asked Respondent if the Loves would be willing to transfer only one of one-half interests to them. Love told Bottomley that the Loves wanted to give their interests away, but did not want to have to give them away twice. Bottomley told Love that he understood and wanted the interests.

12. Between the Christmas Party and on or about February 8, 2002, Bottomley told Respondent that Bottomley was trying to get Allen to take one of the one-half interests in Warner Springs Ranch. Respondent told Bottomley that Allen was a temporary judge sitting on one of Respondent's cases and that Respondent could not be involved with Allen. Bottomley indicated to Respondent that Bottomley understood Respondent's concern.

13. Between the Christmas Party and on or about February 8, 2002, Bottomley asked Respondent if it was possible to convert one of the one-half interests in Warner Springs Ranch so that the two one-half interests could be used during the same months. In response to Bottomley's question, Respondent called and spoke with the President of the Board of Directors ("Board") of the Warner Springs Ranch. The President told Respondent that the Board had not approved similar requests in the past, but there were three new members on the Board and to submit a letter to the Board. Respondent prepared and sent a letter to the Board requesting that it allow the conversion of one of the one-half interests so that the two one-half interests could be used during the same months.

14. Between the Christmas Party and on or about February 8, 2002, the Board rejected Respondent's request. After the Board rejected the request, the President called and spoke with Respondent. The President told Respondent that Warner Springs Ranch offered the option of upgrading one-half ownership interests to full ownership interests for $850. Respondent conveyed the information about the upgrade option to Bottomley.

15. Between the Christmas Party and on or about February 8, 2002, Respondent and Bottomley agreed that the Loves would Quitclaim as a gift a one-half interest in Warner Springs Ranch to the Bottomleys and would Quitclaim as a gift the other one-half interest to Bottomley alone.

10

16.     On or about February 22, 2002, Respondent and/or Bottomley recorded the Quitclaim Deeds transferring one of the Love's one-half ownership interest in Warner Springs Ranch to the Bottomleys, and transferring the Love's other one-half ownership interest to Bottomley.  The Quitclaim Deeds state that the Loves made a gift of their two on-half interests to Bottomley, which was the intent of the Loves and the Bottomleys.

17.     Between on or about February 22, 2002 and on or about March 18, 2002, Allen called Respondent's office and left a message for Respondent to the affect that Allen was attempting to obtain a title policy for the one-half ownership interest in Warner Springs Ranch that Allen had received from Bottomley and inquired if Respondent had paid off a lien of the interest

18.     On or about March 18, 2002, Bottomley and/or Allen recorded the Quitclaim Deed transferring the one-half ownership interest in Warner Springs Ranch that Bottomley had received from the Loves to Allen.

19.     On or about May 20, 2002, Allen recorded the Grant Deed for the one-half ownership interest in Warner Springs Ranch that Allen had received from Bottomley to the Warner Springs Ranch. The Grant Deed states that it was for a "1/2 interest Owner Trading Up" and Documentary Transfer Tax of $1.10 for an approximately value of $2,000.

20.     When Respondent discovered that Bottomley had transferred the one-half ownership interest in Warner Springs Ranch to Allen, Respondent should have requested that Allen return the interest to Bottomley, but did not do so because he believed that it would be discourteous to have done so and because the Loves' believed that the one-half ownership interest had no value because they were paying monthly maintenance fees even though they were not using the recreational facilities.

## CONCLUSIONS OF LAW.

21.     By this conduct, Respondent indirectly gave a thing of value to a temporary judge where no personal or family relationship exists such that gifts are customarily given and exchanged in violation of rule 5-300(A) of the Rules of Professional Conduct.

## PENDING PROCEEDINGS.

The disclosure date referred to, on page 2, paragraph A(7), was October 6, 2011.

## AUTHORITIES SUPPORTING DISCIPLINE.

Standard 2.10 of the Standards for Attorney Sanctions for Professional Misconduct provides as follows:

Culpability of a member of a violation of any provision of the Business and Professions Code not specified in these standards or of a wilful violation of any Rule of Professional Conduct not specified in these standards shall result in reproval or suspension according to the gravity of the offense or the harm, if any, to the victim, with due regard to the purposes of imposing discipline set forth in standard 1.3.

Attachment Page 3

## COSTS OF DISCIPLINARY PROCEEDINGS.

Respondent acknowledges that the Office of the Chief Trial Counsel has informed respondent that as of October 6, 2011, the prosecution costs in this matter are $3,654. Respondent further acknowledges that should this stipulation be rejected or should relief from the stipulation be granted, the costs in this matter may increase due to the cost of further proceedings.

(Do not write above this line.)

| In the Matter of: S. Michael Love | Case number(s): 03-O-04707 |
|---|---|

## SIGNATURE OF THE PARTIES

By their signatures below, the parties and their counsel, as applicable, signify their agreement with each of the recitations and each of the terms and conditions of this Stipulation Re Facts, Conclusions of Law, and Disposition.

October 7, 2011
Date

Respondent's Signature

S. Michael Love
Print Name

October 7, 2011
Date

Respondent's Counsel Signature

Daniel M. White
Print Name

October 18, 2011
Date

Deputy Trial Counsel's Signature

Charles T. Calix
Print Name

(Effective January 1, 2011)

Signature Page

(Do not write above this line.)

| In the Matter of:<br>S. Michael Love | Case Number(s):<br>03-O-04707 |
|---|---|

## REPROVAL ORDER

Finding that the stipulation protects the public and that the interests of Respondent will be served by any conditions attached to the reproval, IT IS ORDERED that the requested dismissal of counts/charges, if any, is GRANTED without prejudice, and:

☑   The stipulated facts and disposition are APPROVED AND THE REPROVAL IMPOSED.

☐   The stipulated facts and disposition are APPROVED AS MODIFIED as set forth below, and the REPROVAL IMPOSED.

☑   All court dates in the Hearing Department are vacated.

The parties are bound by the stipulation as approved unless: 1) a motion to withdraw or modify the stipulation, filed within 15 days after service of this order, is granted; or 2) this court modifies or further modifies the approved stipulation. (See rule 5.58(E) & (F), Rules of Procedure.) **Otherwise the stipulation shall be effective 15 days after service of this order.**

**Failure to comply with any conditions attached to this reproval may constitute cause for a separate proceeding for willful breach of rule 1-110, Rules of Professional Conduct.**

___10/19/11_____          ___K Honn_____
Date                                                              Judge of the State Bar Court

**RICHARD A. HONN**

(Effective January 1, 2011)

**Page** _11_

Reproval Order

# CERTIFICATE OF SERVICE

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on October 20, 2011, I deposited a true copy of the following document(s):

**STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION AND ORDER APPROVING PUBLIC REPROVAL**

in a sealed envelope for collection and mailing on that date as follows:

☒ by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

> **STEVEN AMUNDSON**
> **WHITE OLIVER AMUNDSON & GALLAGHER**
> **550 W "C" ST STE 950**
> **SAN DIEGO, CA   92101**

☒ by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

**CHARLES CALIX, ENFORCEMENT, Los Angeles**

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on October 20, 2011.

Tammy Cleaver
Case Administrator
State Bar Court

**EXHIBIT C**

(Do not write above this line.)

## State Bar Court of California
### Hearing Department
### Los Angeles
#### REPROVAL

| Counsel For The State Bar | Case Number(s): 03-O-04706-DFM | For Court use only |
|---|---|---|
| Kevin B. Taylor<br>Supervising Trial Counsel<br>1149 S. Hill Street<br>Los Angeles, CA 90015<br>(213) 765-1000<br><br>Bar # 146853 | | **FILED**<br>NOV 1 4 2011<br>STATE BAR COURT<br>CLERK'S OFFICE<br>LOS ANGELES |
| Counsel For Respondent<br><br>Donald A. English<br>550 West C Street, Suite 1800<br>San Diego, CA 92101<br>(619) 338-6610 | | **NOT FOR PUBLICATION** |
| Bar # 115569 | Submitted to: **Settlement Judge**<br><br>STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION AND ORDER APPROVING | |
| In the Matter of:<br>James Dewolfe Allen<br><br>Bar # 54004<br><br>A Member of the State Bar of California (Respondent) | **PRIVATE REPROVAL**<br><br>☐ PREVIOUS STIPULATION REJECTED | |

**Note: All information required by this form and any additional information which cannot be provided in the space provided, must be set forth in an attachment to this stipulation under specific headings, e.g., "Facts," "Dismissals," "Conclusions of Law," "Supporting Authority," etc.**

## A. Parties' Acknowledgments:

(1)   Respondent is a member of the State Bar of California, admitted January 5, 1966.

(2)   The parties agree to be bound by the factual stipulations contained herein even if conclusions of law or disposition are rejected or changed by the Supreme Court.

(3)   All investigations or proceedings listed by case number in the caption of this stipulation are entirely resolved by this stipulation and are deemed consolidated. Dismissed charge(s)/count(s) are listed under "Dismissals." The stipulation consists of **12** pages, not including the order.

(Effective January 1, 2011)

1

kwiktag ®     018 042 365

Reproval

(Do not write above this line.)

(4) A statement of acts or omissions acknowledged by Respondent as cause or causes for discipline is included under "Facts."

(5) Conclusions of law, drawn from and specifically referring to the facts are also included under "Conclusions of Law".

(6) The parties must include supporting authority for the recommended level of discipline under the heading "Supporting Authority."

(7) No more than 30 days prior to the filing of this stipulation, Respondent has been advised in writing of any pending investigation/proceeding not resolved by this stipulation, except for criminal investigations.

(8) Payment of Disciplinary Costs—Respondent acknowledges the provisions of Bus. & Prof. Code §§6086.10 & 6140.7. (Check one option only):

☐ Costs are added to membership fee for calendar year following effective date of discipline (public reproval).

☒ Case ineligible for costs (private reproval).

☐ Costs are to be paid in equal amounts prior to February 1 for the following membership years: (Hardship, special circumstances or other good cause per rule 5.132, Rules of Procedure.) If Respondent fails to pay any installment as described above, or as may be modified by the State Bar Court, the remaining balance is due and payable immediately.

☐ Costs are waived in part as set forth in a separate attachment entitled "Partial Waiver of Costs".

☐ Costs are entirely waived.

(9) The parties understand that:

(a) ☐ A private reproval imposed on a respondent as a result of a stipulation approved by the Court prior to initiation of a State Bar Court proceeding is part of the respondent's official State Bar membership records, but is not disclosed in response to public inquiries and is not reported on the State Bar's web page. The record of the proceeding in which such a private reproval was imposed is not available to the public except as part of the record of any subsequent proceeding in which it is introduced as evidence of a prior record of discipline under the Rules of Procedure of the State Bar.

(b) ☒ A private reproval imposed on a respondent after initiation of a State Bar Court proceeding is part of the respondent's official State Bar membership records, is disclosed in response to public inquiries and is reported as a record of public discipline on the State Bar's web page.

(c) ☐ A public reproval imposed on a respondent is publicly available as part of the respondent's official State Bar membership records, is disclosed in response to public inquiries and is reported as a record of public discipline on the State Bar's web page.

## B. Aggravating Circumstances [for definition, see Standards for Attorney Sanctions for Professional Misconduct, standard 1.2(b)]. Facts supporting aggravating circumstances are required.

(1) ☐ **Prior record of discipline** [see standard 1.2(f)]

(a) ☐ State Bar Court case # of prior case

(b) ☐ Date prior discipline effective

(c) ☐ Rules of Professional Conduct/ State Bar Act violations:

(d) ☐ Degree of prior discipline

(Effective January 1, 2011)

Reproval

(Do not write above this line.)

(e) ☐ If Respondent has two or more incidents of prior discipline, use space provided below or a separate attachment entitled "Prior Discipline.

(2) ☐ **Dishonesty:** Respondent's misconduct was surrounded by or followed by bad faith, dishonesty, concealment, overreaching or other violations of the State Bar Act or Rules of Professional Conduct.

(3) ☐ **Trust Violation:** Trust funds or property were involved and Respondent refused or was unable to account to the client or person who was the object of the misconduct for improper conduct toward said funds or property.

(4) ☐ **Harm:** Respondent's misconduct harmed significantly a client, the public or the administration of justice.

(5) ☐ **Indifference:** Respondent demonstrated indifference toward rectification of or atonement for the consequences of his or her misconduct.

(6) ☐ **Lack of Cooperation:** Respondent displayed a lack of candor and cooperation to victims of his/her misconduct or to the State Bar during disciplinary investigation or proceedings.

(7) ☐ **Multiple/Pattern of Misconduct:** Respondent's current misconduct evidences multiple acts of wrongdoing or demonstrates a pattern of misconduct.

(8) ☒ **No aggravating circumstances** are involved.

**Additional aggravating circumstances:**

## C. Mitigating Circumstances [see standard 1.2(e)]. Facts supporting mitigating circumstances are required.

(1) ☒ **No Prior Discipline:** Respondent has no prior record of discipline over many years of practice coupled with present misconduct which is not deemed serious. Respondent has no record of prior discipline since being admitted to the practice of law in California in January 1966.

(2) ☐ **No Harm:** Respondent did not harm the client or person who was the object of the misconduct.

(3) ☐ **Candor/Cooperation:** Respondent displayed spontaneous candor and cooperation with the victims of his/her misconduct and to the State Bar during disciplinary investigation and proceedings.

(4) ☐ **Remorse:** Respondent promptly took objective steps spontaneously demonstrating remorse and recognition of the wrongdoing, which steps were designed to timely atone for any consequences of his/her misconduct.

(5) ☐ **Restitution:** Respondent paid $_____ on _____ in restitution to _____ without the threat or force of disciplinary, civil or criminal proceedings.

(6) ☐ **Delay:** These disciplinary proceedings were excessively delayed. The delay is not attributable to Respondent and the delay prejudiced him/her.

(7) ☐ **Good Faith:** Respondent acted in good faith.

(Effective January 1, 2011)

Reproval

3

(Do not write above this line.)

(8) ☐ **Emotional/Physical Difficulties:** At the time of the stipulated act or acts of professional misconduct Respondent suffered extreme emotional difficulties or physical disabilities which expert testimony would establish was directly responsible for the misconduct. The difficulties or disabilities were not the product of any illegal conduct by the member, such as illegal drug or substance abuse, and Respondent no longer suffers from such difficulties or disabilities.

(9) ☐ **Severe Financial Stress:** At the time of the misconduct, Respondent suffered from severe financial stress which resulted from circumstances not reasonably foreseeable or which were beyond his/her control and which were directly responsible for the misconduct.

(10) ☐ **Family Problems:** At the time of the misconduct, Respondent suffered extreme difficulties in his/her personal life which were other than emotional or physical in nature.

(11) ☒ **Good Character:** Respondent's good character is attested to by a wide range of references in the legal and general communities who are aware of the full extent of his/her misconduct. Many individuals, including current and former members of the judiciary, have attested to Respondent's good character and the aberational nature of the misconduct addressed herein.

(12) ☐ **Rehabilitation:** Considerable time has passed since the acts of professional misconduct occurred followed by convincing proof of subsequent rehabilitation.

(13) ☐ **No mitigating circumstances** are involved.

**Additional mitigating circumstances:**

See page **8** of this stipulation.

## D. Discipline:

(1) ☒ **Private reproval (check applicable conditions, if any, below)**

    (a) ☐ Approved by the Court prior to initiation of the State Bar Court proceedings (no public disclosure).

    (b) ☒ Approved by the Court after initiation of the State Bar Court proceedings (public disclosure).

or

(2) ☐ **Public reproval (Check applicable conditions, if any, below)**

## E. Conditions Attached to Reproval:

(1) ☒ Respondent must comply with the conditions attached to the reproval for a period of two (2) years.

(2) ☒ During the condition period attached to the reproval, Respondent must comply with the provisions of the State Bar Act and Rules of Professional Conduct.

(3) ☒ Within ten (10) days of any change, Respondent must report to the Membership Records Office of the State Bar and to the Office of Probation of the State Bar of California ("Office of Probation"), all changes of information, including current office address and telephone number, or other address for State Bar purposes, as prescribed by section 6002.1 of the Business and Professions Code.

(4) ☒ Within thirty (30) days from the effective date of discipline, Respondent must contact the Office of Probation and schedule a meeting with Respondent's assigned probation deputy to discuss these terms and conditions of probation. Upon the direction of the Office of Probation, Respondent must meet with the

(Effective January 1, 2011)

Reproval

4

(Do not write above this line.)

probation deputy either in-person or by telephone. During the period of probation, Respondent must promptly meet with the probation deputy as directed and upon request.

(5) ☒ Respondent must submit written quarterly reports to the Office of Probation on each January 10, April 10, July 10, and October 10 of the condition period attached to the reproval. Under penalty of perjury, Respondent must state whether Respondent has complied with the State Bar Act, the Rules of Professional Conduct, and all conditions of the reproval during the preceding calendar quarter. Respondent must also state in each report whether there are any proceedings pending against him or her in the State Bar Court and if so, the case number and current status of that proceeding. If the first report would cover less than 30 (thirty) days, that report must be submitted on the next following quarter date, and cover the extended period.

In addition to all quarterly reports, a final report, containing the same information, is due no earlier than twenty (20) days before the last day of the condition period and no later than the last day of the condition period.

(6) ☐ Respondent must be assigned a probation monitor. Respondent must promptly review the terms and conditions of probation with the probation monitor to establish a manner and schedule of compliance. During the period of probation, Respondent must furnish such reports as may be requested, in addition to the quarterly reports required to be submitted to the Office of Probation. Respondent must cooperate fully with the monitor.

(7) ☒ Subject to assertion of applicable privileges, Respondent must answer fully, promptly and truthfully any inquiries of the Office of Probation and any probation monitor assigned under these conditions which are directed to Respondent personally or in writing relating to whether Respondent is complying or has complied with the conditions attached to the reproval.

(8) ☒ Within one (1) year of the effective date of the discipline herein, Respondent must provide to the Office of Probation satisfactory proof of attendance at a session of the Ethics School, and passage of the test given at the end of that session.

    ☐ No Ethics School recommended. Reason: .

(9) ☐ Respondent must comply with all conditions of probation imposed in the underlying criminal matter and must so declare under penalty of perjury in conjunction with any quarterly report to be filed with the Office of Probation.

(10) ☐ Respondent must provide proof of passage of the Multistate Professional Responsibility Examination ("MPRE"), administered by the National Conference of Bar Examiners, to the Office of Probation within one year of the effective date of the reproval.

    ☒ No MPRE recommended. Reason: Given the unique circumstances of the misconduct addressed herein and the fact that Respondent presents very little threat of engaging in future misconduct, the parties agree that passage of the MPRE is not necessary to protect the public. See In the Matter of Respondent G (Rev. Dept. 1992) 2 Cal. State Bar Ct. Rptr. 181.

(11) ☐ The following conditions are attached hereto and incorporated:

    ☐ Substance Abuse Conditions          ☐ Law Office Management Conditions

    ☐ Medical Conditions                  ☐ Financial Conditions

## F. Other Conditions Negotiated by the Parties: Not Applicable.

(Effective January 1, 2011)

Reproval

(Do not write above this line.)

| In the Matter of: | Case Number(s): |
|---|---|
| James Dewolfe Allen | 03-O-04706-DFM |

## Nolo Contendere Plea Stipulations to Facts, Conclusions of Law, and Disposition

The terms of pleading nolo contendere are set forth in the Business and Professions Code and the Rules of Procedures of the State Bar. The applicable provisions are set forth below:

### Business and Professions Code § 6085.5 Disciplinary Charges; Pleas to Allegations

There are three kinds of pleas to the allegations of a notice of disciplinary charges or other pleading which initiates a disciplinary proceeding against a member:

(a) Admission of culpability.

(b) Denial of culpability.

(c) Nolo contendere, subject to the approval of the State Bar Court. The court shall ascertain whether the member completely understands that a plea of nolo contendere will be considered the same as an admission of culpability and that, upon a plea of nolo contendere, the court will find the member culpable. The legal effect of such a plea will be the same as that of an admission of culpability for all purposes, except that the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, or the factual basis for, the pleas, may not be used against the member as an admission in any civil suit based upon or growing out of the act upon which the disciplinary proceeding is based.

### Rules of Procedure of the State Bar, rule 5.56. Stipulations to Facts, Conclusions of Law, and Disposition

"**(A) Contents.** A proposed stipulation to facts, conclusions of law, and disposition must comprise:
[¶] . . . [¶]
(5) a statement that the member either:
(a) admits the truth of the facts comprising the stipulation and admits culpability for misconduct; or
(b) pleads nolo contendere to those facts and misconduct;
[¶] . . . [¶]
**(B) Plea of Nolo Contendere.** If the member pleads nolo contendere, the stipulation must also show that the member understands that the plea is treated as an admission of the stipulated facts and an admission of culpability."

I, the Respondent in this matter, have read the applicable provisions of Business and Professions Code section 6085.5 and rule 5.56 of the Rules of Procedure of the State Bar. I plead nolo contendere to the charges set forth in this stipulation and I completely understand that my plea will be considered the same as an admission of culpability except as stated in Business and Professions Code section 6085.5(c).

| 11-9-11 | _[signature]_ | James Dewolfe Allen |
|---|---|---|
| Date | Respondent's Signature | Print Name |

(Effective January 1, 2011)

Nolo Contendere Plea

**Page 6**

# ATTACHMENT TO

# STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION

**IN THE MATTER OF: James Dewolfe Allen**

**STATE BAR COURT CASE NUMBER: 03-O-04706-DFM**

James Dewolfe Allen ("Respondent") pleads nolo contendere to the following facts and violations. Respondent completely understands that the plea for nolo contendere shall be considered the same as an admission of the stipulated facts and of his culpability of the statutes and/or Rules of Professional Conduct specified herein.

## FACTS

1.      On or about October 30, 1997, Shirley Rogozienski filed a petition for dissolution in the San Diego Superior Court ("Superior Court") titled *In re the Marriage of Shirley L. Rogozienski and Frank E. Rogozienski*, Case No. D440154 ("*In re Rogozienski*").

2.      On or about July 29, 1998, Shirley Rogozienski and Frank Rogozienski stipulated to Respondent serving as a temporary judge for all purposes in *In re Rogozienski* pursuant to Rule 244 of the California Rules of Court.

3.      On or about August 4, 1998, the Superior Court approved and ordered Respondent to serve as the temporary judge in *In re Rogozienski*. On or about August 4, 1998, Respondent signed the oath to serve as the temporary judge in *In re Rogozienski*. Respondent served as temporary judge in *In re Rogozienski* until March 27, 2003.

4.      As temporary judge, Respondent issued decisions that affected the characterization and distribution of the property interests of the Rogozienskis in *In re Rogozienski*.

5.      In December 2001, lead counsel for Shirley Rogozienski in *In re Rogozienski* ("Shirley's counsel") owned two one-half time share interests in Warner Springs Ranch. Warner Springs Ranch was a time share resort property that permitted owners to use the recreational facilities at the ranch, including but not limited to golf, tennis, horseback riding, and hiking. A one-half ownership interest permitted owners to use the facilities during odd numbered or even number months. A full ownership interest permitted owners to use the facilities year round.

6.      In December 2001, Shirley's counsel no longer used the recreational facilities at Warner Springs Ranch and wished to divest himself of the time share interests in order to avoid paying further monthly maintenance fees. Respondent's friend was interested in obtaining a time share interest at Warner Springs Ranch and wanted to accept the time share interests which Shirley's counsel was willing to transfer.

7.      However, after agreeing to accept the time share interests of Shirley's counsel, Respondent's friend determined that he did not want to pay the monthly maintenance fee on two one-half time share interests. Therefore, Respondent's friend proposed to Respondent that Respondent's friend transfer a one-half interest time share in Warner Springs Ranch to Respondent.

**7**

Attachment Page 1

8. In February 2002, Shirley's counsel transferred his two one-half time share interests at Warner Springs Ranch to a friend of Respondent's. At that time, Respondent's friend assumed the monthly maintenance fees for both one-half interests.

9. In March 2002, Respondent's friend transferred one of the two one-half interests in the time share he had received from Shirley's counsel to Respondent. At that time, Respondent assumed the monthly maintenance fees for the one-half interest he received.

10. In March 2002, when Respondent received his one-half interest in the Warner Springs Ranch time share, he knew that his friend had received it from Shirley's counsel. At that time, Shirley's counsel continued to appear before Respondent who was still the temporary judge in *In re Rogozienski*.

11. The transfers of the time share interests were not made in an attempt to influence Respondent in his capacity as the temporary judge in *In re Rogozienski*. Additionally, Respondent reasonably believed and continues to believe that the transfer was not made in an attempt to influence him in *In re Rogozienski*. Finally, Respondent contends that the transfer did not influence any decision he made or action he took as the temporary judge in *In re Rogozienski*.

12. Respondent's receipt of the subject time share interest was information which he was required to disclose, in writing or on the record, to the parties in *In re Rogozienski* about the time he received the interest. However, Respondent did not disclose to the parties in *In re Rogozienski*, in writing or any other manner, about the time he received the time share interest, of the fact that he had received the interest.

13. In March 2003, in response to an inquiry of one of the parties in *In re Rogozienski*, Respondent made a written disclosure of his receipt of the subject time share interest.

## CONCLUSIONS OF LAW

14. By failing to disclose to the parties in *In re Rogozienski* of the fact that he had received the subject time share interest, about the time he received the interest, Respondent failed to comply with rule 244 of the California Rules of Court and canon 6D(2)(f) of the Code of Judicial Ethics in willful violation of rule 1-710 of the Rules of Professional Conduct.

## DISMISSALS

The parties respectfully request that the Court, in the interest of justice, dismiss Counts One, Two and Four of the First Amended Notice of Disciplinary Charges filed in this matter. Those Counts allege that Respondent violated rules 1-710 and 1-120 of the Rules of Professional Conduct.

## ADDITIONAL FACTORS IN MITIGATION

### Candor /Cooperation

Respondent promptly responded to an inquiry from one of the parties in *In re Rogozienski*, made disclosures in writing, and voluntarily withdrew as temporary judge. Respondent displayed honesty and cooperation with the State Bar in this proceeding.

**8**

Attachment Page 2

**Remorse**

Respondent is remorseful for the conduct addressed in herein and has acknowledged the wrongfulness of same.

**Good Faith**

Respondent acted in good faith and with no intent to violate any rules, statutes, or canons of the Code of Judicial Ethics. Respondent agreed to serve as the private temporary judge in the Rogozienski dissolution action at the parties' express request in order to assist them in resolving their marital dissolution matter based upon his experience and skills as a family law specialist and his excellent reputation in the legal community. Throughout Respondent's 45 year career as an attorney, he has made substantial contributions to the legal community. Respondent believed that his agreement to serve as a private judge in the Rogozienski dissolution action was consistent with honoring his commitment to assist the overburdened family law bench, as well as support his fellow colleagues in the family law bar who requested that he serve as temporary judge on behalf of their respective clients.

Respondent did not disclose the two property transfers at the time they occurred because of his belief that they were two separate transactions between different parties, and Respondent was not aware of any duty to make the disclosure under those circumstances. In addition, Respondent believed that the property transfers did not constitute a gift, that Respondent's friend was not his agent in the transfers and there was consideration for the transfers. The two property transfer transactions were not concealed and were memorialized in separate deeds that were publically recorded at the San Diego County Recorders' Office.

**Good Character**

Respondent has an impeccable professional record in his over 45 years practicing law and has made numerous contributions to the legal community. Respondent has served on various committees of the State Bar of California, including the Disciplinary Committee; the Carson Committee on Legal Specialization; the Family Law Advisory Commission; and the Executive Committee, Section on Family Law. Throughout his career, Respondent has also served on various committees of the San Diego County Bar Association, including the Committee on Legal Ethics and Unlawful Practice; the Arbitration Committee; the Committee and Section on Law Office Economics and Management; and the Executive Committee, Certified Family Law Specialists. Respondent is a Fellow of the American Academy of Matrimonial Lawyers and has been a member of the board of directors of the Southern California Chapter of the Academy.

Respondent has also been active in contributing to the continuing education of the family law bench and bar. Throughout his career, Respondent has lectured on various topics related to family law for various professional organizations, including the San Diego Trial Lawyers Association; California Continuing Education of the Bar; San Diego Certified Family Law Specialists; and San Diego County Bar Association/Matthew Bender. Since 1985 to the present, Respondent has been an editorial consultant for California Family Law Monthly (Matthew Bender). Respondent has also been a Co-Editor of the San Diego County Bar Association's Certified Family Law Specialists' Marital Settlement Agreement, a practical guide for drafting marital settlement agreements which is widely used among San Diego County family law specialists. The proceeds from the sale of the materials are donated to the San Diego County Bar Association Family Law Specialists.

Attachment Page 3

For the past 30 years, although Respondent has a full time law practice specializing in family law in San Diego, Respondent has volunteered his services as a pro tem judge and pro tem settlement judge of the San Diego Superior Court, Family Law Division on a pro bono basis. Respondent was acknowledged for his distinguished pro bono service to the overburdened San Diego Superior Court Family Law Division by being awarded the San Diego Family Judge's Service Award, which is also known as the Judge Norbert Ehrenfreund "Norby" Award in 1996.

In addition to serving on various legal committees and organizations, Respondent has also volunteered his time in several community and philanthropic organizations. For over 20 years, Respondent has served on the board of directors of Kids' Turn. Kids' Turn is an organization that promotes, supports, and secures the well being of children who are experiencing the challenges of family separation and provides programs of intervention and prevention to assist families in successfully transitioning after major family upheavals such as divorce, separation, and legal actions. Respondent is a founder and past Chairman of the San Diego Forum and Young Friends of San Diego Symphony. Respondent has also served on the board of directors of the San Diego Symphony Orchestra Association. Respondent is the past President and Secretary of the San Diego Chapter of Amherst College Alumni Association.

A wide range of references in the legal and non-legal community have provided numerous sworn declarations attesting to his extraordinary good character. These include declarations by distinguished retired family law judges, top family law practitioners who have served in leadership positions with Respondent in family law and charitable organizations, former and current clients, and preeminent leaders in the business, legal, and non-profit communities who have known Respondent for as long as 50 years. Each of these declarants unequivocally attest to Respondent's integrity, honesty, and exemplary character, and are aware of the nature and extent of the allegations against Respondent in these proceedings.

## DISCUSSION RE RECOMMENDED DISCIPLINE

Standard 2.10 of the *Standards for Attorney Sanctions for Professional Misconduct* provides as follows:

Culpability of a member of a violation of any provision of the Business and Professions Code not specified in these standards or of a wilful violation of any Rule of Professional Conduct not specified in these standards shall result in reproval or suspension according to the gravity of the offense or the harm, if any, to the victim, with due regard to the purposes of imposing discipline set forth in standard 1.3.

Standard 2.10 applies to violations of rule 1-710 of the Rules of Professional Conduct.

In this matter, Respondent did not act in bad faith, but rather failed to appreciate his obligation to disclose information to the parties in *In re Rogozienski* at about the time he received the subject time share interest which a reasonable person may have considered relevant to a question of disqualification. Given, Respondent's otherwise exemplary 45 years of practice as a member of the State Bar of California, his acknowledgement of wrongdoing and remorse over same and the fact that it is unlikely that he will repeat his misconduct in the future, the parties submit that this reproval with public disclosure is sufficient to address the misconduct and protect the public.

Additionally, decisions published by the Commission on Judicial Performance suggest that Respondent's misconduct, if committed by a full time judge, may warrant a private admonishment. For example, a private admonishment was imposed upon a judge who failed to disclose on the record

10

Attachment Page 4

various relationships with attorneys appearing before the judge, including a financial relationship involving the ownership real estate. (Commission on Judicial Performance Ann. Rept. (2008) Private Admonishment 7, p. 26)

## WAIVER OF VARIANCE BETWEEN NOTICE OF DISCIPLINARY CHARGES AND STIPULATED FACTS AND CULPABILITY

The parties waive any variance between the Notice of Disciplinary Charges and First Amended Notice of Disciplinary Charges filed in this matter and the facts and/or conclusions of law contained in this stipulation. Additionally, the parties waive the issuance of a further amended Notice of Disciplinary Charges. Finally, the parties waive the right to a formal hearing on any charge not included in the pending Notice of Disciplinary Charges.

## PENDING PROCEEDINGS

The disclosure date referred to, on page 2, paragraph A(7), was November 9, 2011.

(Do not write above this line.)

| In the Matter of: | Case number(s): |
|---|---|
| James Dewolfe Allen | 03-O-04706-DFM |

## SIGNATURE OF THE PARTIES

By their signatures below, the parties and their counsel, as applicable, signify their agreement with each of the recitations and each of the terms and conditions of this Stipulation Re Facts, Conclusions of Law, and Disposition.

| 11-9-11 | | James Dewolfe Allen |
|---|---|---|
| Date | Respondent's Signature | Print Name |
| | | Donald A. English |
| Date | Respondent's Counsel Signature | Print Name |
| | | Kevin B. Taylor |
| Date | Deputy Trial Counsel's Signature | Print Name |

(Effective January 1, 2011)

**Page 12**

(Do not write above this line.)

| In the Matter of: | Case number(s): |
|---|---|
| James Dewolfe Allen | 03-O-04706-DFM |

## SIGNATURE OF THE PARTIES

By their signatures below, the parties and their counsel, as applicable, signify their agreement with each of the recitations and each of the terms and conditions of this Stipulation Re Facts, Conclusions of Law, and Disposition.

Date _____

Respondent's Signature _____

James Dewolfe Allen
Print Name

November 9, 2011
Date

Respondent's Counsel Signature _____

Donald A. English
Print Name

11/9/11
Date

Deputy Trial Counsel's Signature _____

Kevin B. Taylor
Print Name

(Effective January 1, 2011)

Page 12

(Do not write above this line.)

| In the Matter of: James Dewolfe Allen | Case Number(s): 03-O-04706-DFM |
|---|---|

## REPROVAL ORDER

Finding that the stipulation protects the public and that the interests of Respondent will be served by any conditions attached to the reproval, IT IS ORDERED that the requested dismissal of counts/charges, if any, is GRANTED without prejudice, and:

☒ The stipulated facts and disposition are APPROVED AND THE REPROVAL IMPOSED.

☐ The stipulated facts and disposition are APPROVED AS MODIFIED as set forth below, and the REPROVAL IMPOSED.

☒ All court dates in the Hearing Department are vacated.

The parties are bound by the stipulation as approved unless: 1) a motion to withdraw or modify the stipulation, filed within 15 days after service of this order, is granted; or 2) this court modifies or further modifies the approved stipulation. (See rule 5.58(E) & (F), Rules of Procedure.) **Otherwise the stipulation shall be effective 15 days after service of this order.**

**Failure to comply with any conditions attached to this reproval may constitute cause for a separate proceeding for willful breach of rule 1-110, Rules of Professional Conduct.**

Date  11-10-11

RICHARD A. HONN
Judge of the State Bar Court

(Effective January 1, 2011)

**Page _____**

Reproval Order

# CERTIFICATE OF SERVICE

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on November 14, 2011, I deposited a true copy of the following document(s):

## STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION AND ORDER APPROVING PRIVATE REPROVAL

in a sealed envelope for collection and mailing on that date as follows:

☒ by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

**DONALD ALBERT ENGLISH**
**ENGLISH & GLOVEN**
**550 W "C" ST #1800**
**SAN DIEGO, CA 92101**

☒ by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

**CHARLES CALIX, Enforcement, Los Angeles**
**KEVIN TAYLOR, Enforcement, Los Angeles**

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on November 14, 2011.

Tammy Cleaver
Case Administrator
State Bar Court